**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**


**RANDALL LEE CONRAD,**

             Plaintiff,

**v.**                                                    **CIVIL ACTION NO. 3:12-CV-133**
                                                          **(JUDGE GROH)**


**PERDUE, Warden; FEDERAL**
**BUREAU OF PRISONS; DEPARTMENT**
**OF JUSTICE; CREASY, Counselor;**
**WILSON, Secretary; THROPE, Officer;**
**and Numerous FCI Gilmer Employees,**
**Officers, Secretaries, Counselors, Case**
**Managers, etc., construed as JOHN DOES**
**and/or JANE DOES,**

             Defendants.


## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

### I.  Introduction

        On this day, the above-styled matter came before the Court for consideration of the

Report and Recommendation of United States Magistrate Judge James E. Seibert.

Pursuant to Rule 2 of the Local Rules of Prisoner Litigation Procedure, this action was

referred to Judge Seibert for submission of a proposed Report and Recommendation.

Judge Seibert filed his Report and Recommendation [Doc.49] on October 21, 2013.  In that

filing, he recommended that this Court grant the defendants' Motion to Dismiss, or in the

Alternative, Motion for Summary Judgment and dismiss with prejudice Plaintiff's Complaint.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a de novo review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. Thomas v. Arn, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of de novo review and Plaintiff's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

In this case, objections to Magistrate Judge Seibert's Report and Recommendation were due within fourteen (14) days after being served with a copy of the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. Plaintiff timely filed his objections on November 13, 2013. Accordingly, this Court will undertake a de novo review of those portions of Judge Seibert's findings to which objection is made. This Court will review the remainder of the Report and Recommendation for clear error.

## II. Background

### A. Factual Background

Plaintiff alleges that himself and other inmates at FCI Gilmer were exposed to secondhand smoke when Bureau of Prisons ("BOP") employees smoked on the job in the outdoor areas of the facility, in violation of BOP Program Statement § 551.160. Plaintiff argues that his Eighth Amendment rights were violated when he was required to walk

2

through clouds of secondhand smoke several times a day. Plaintiff contends that the secondhand smoke caused him health problems, such as headaches and dizziness. He also alleges that the defendants refused him medical attention for his symptoms.

Plaintiff contends that he filed administrative grievances because of his exposure to secondhand smoke and that prison officials retaliated against him for filing the grievances. Finally, Plaintiff alleges that the defendants denied his access to the administrative grievance process by throwing away or not turning in his BP-8s and BP-9s when he filed them.

Plaintiff seeks injunctive relief directing FCI Gilmer staff to immediately stop smoking inside the compound, transferring him to a smoke-free FCI, and ordering medical staff to provide him with free medical monitoring in the form of biannual check-ups to screen him for "all types of cancer" attributable to secondhand smoke. Plaintiff also requests a jury trial and compensation in the amount of $50,000,000.00.

### B. Procedural History

On November 13, 2012, Plaintiff, acting *pro se*, filed this <u>Bivens</u> civil rights complaint against the above-named defendants. On March 19, 2013, Judge Seibert conducted a preliminary review of the file and determined that summary dismissal was not appropriate. Plaintiff was given an additional thirty days to identify the John and/or Jane Doe defendants, and summonses were issued.

On May 21, 2013, the defendants filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. On June 3, 2013, Judge Seibert issued a <u>Roseboro</u> notice to the *pro se* Plaintiff. On June 24, 2013, Plaintiff filed his response and a motion to amend

his response once the defendants provided certain documents in a more legible format. On July 9, 2013, Judge Seibert entered an Order directing the defendants to provide legible copies of the documents and granted Plaintiff's motion to amend his response once he received the documents. On July 15, 2013, the defendants submitted their supplemental response. On August 16, 2013, Plaintiff filed his amended Roseboro response.

On October 21, 2013, Judge Seibert issued a Report and Recommendation that recommended that the Court grant the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and dismiss with prejudice Plaintiff's Complaint. On November 13, 2013, Plaintiff filed his objections to the Report and Recommendation. Accordingly, this issue is ripe for the Court's review.

### III. Standard of Review

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (1990)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999).

But, a complaint must be dismissed if it does not allege "enough facts to state a

claim to relief that is *plausible* on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added).  "The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B.  Summary Judgment

The United States Supreme Court and the Fourth Circuit Court of Appeals have recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991).

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment.  *See* FED. R. CIV. P. 56.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor

of either party." <u>Anderson</u>, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. FED. R. CIV. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 323-35; <u>Anderson</u>, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249 (citations omitted).

## IV. Discussion

Plaintiff filed several objects to Judge Seibert's Report and Recommendation. The Court addresses each objection below.

### 1. Summary Judgment Standard

First, Plaintiff objects to Judge Seibert's Report and Recommendation because Plaintiff argues that Judge Seibert failed to view the facts in the light most favorable to the nonmoving party. Plaintiff states that Judge Seibert "goes above and beyond to look in the light most favorable to the defendant, he weighs the evidence and determines only the defendant is truthful."

However, in reviewing Judge Seibert's Report and Recommendation, it is clear that he viewed the facts in the light most favorable to Plaintiff. For example, in determining whether exhaustion of remedies barred Plaintiff's claims Judge Seibert

6

"constru[ed] the facts available at present in the light most favorable to the nonmoving party," and he found that there was a genuine issue of material fact that was sufficient to deny Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. R & R, 16. Accordingly, Plaintiff's objection as to the standard of review and Judge Seibert's application of the standard is overruled. However, because Plaintiff objects to the entirety of the Report and Recommendation, this Court will review de novo each of Judge Seibert's conclusions.

### 2. Exhaustion of Administrative Remedies

Plaintiff objects to Judge Seibert's Report and Recommendation on the basis that Defendants have engaged in "false recor[d] keeping." Pl. Obj. 2. Although Plaintiff takes issue with some of the facts recited by Judge Seibert; however, he does not object to Judge Seibert's legal conclusion: that Plaintiff's claims are not barred by an alleged failure to exhaust his administrative remedies and that they should be given full review.

Even if this Court takes Plaintiff's factual contentions in his objections in the light most favorable to him regarding the issue of exhaustion of administrative remedies, the result would still be the same. A genuine issue of material fact exists regarding whether Plaintiff exhausted his administrative remedies. Therefore, Plaintiff's claim is not barred by the alleged failure to exhaust his administrative remedies, and it was proper for Judge Seibert to conduct a full review of Plaintiff's claims.

### 3. Challenges to Plaintiff's Conditions of Confinement

The Eighth Amendment provides protection with respect to "the treatment a

prisoner receives in prison and the conditions under which he is confined." <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993). "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements- that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." <u>Rish v. Johnson</u>, 131 F.3d 1092, 1097 (4th Cir. 1997) (citations omitted) (internal quotations omitted).

To satisfy the <u>objective component</u>, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." <u>Id.</u> Indeed, the Fourth Circuit requires extreme deprivations to satisfy the objective component. <u>See</u> <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995) (holding that "only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim").

To satisfy the <u>subjective component</u>, the prisoner must show deliberate indifference by prison officials. <u>Id.</u> (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)). "[C]onduct that amounts to 'deliberate indifference' . . . is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim." <u>Young</u>, 238 F.3d at 575. An officer is deliberately indifferent to a substantial risk of harm to a prisoner when that officer "knows of and disregards" the risk. <u>Farmer</u>, 511 U.S. at 837. "Deliberate indifference requires a showing that the defendants *actually knew of* and *disregarded* a substantial risk of serious injury to the detainee . . . ." <u>Young</u>, 238 F.3d at 575-76 (emphasis added).

8

**A. Exposure to Secondhand Smoke**

Plaintiff alleges his Eighth Amendment rights were violated when he was required to walk through clouds of secondhand smoke three to four times each day for a period of a few months whenever he entered or exited FCI Gilmer facilities. He states he has suffered a myriad of health problems from this exposure including headaches, sinus problems, dizziness, shortness of breath, nausea, vomiting, loss of appetite, twenty-pound weight loss, and stress problems from worrying about developing cancer.

**1. Objective Element**

In this case, to satisfy the objective component, Plaintiff alleges present harm resulting from his exposure to secondhand smoke and a substantial risk of serious future harm. Plaintiff objects to Judge Seibert's conclusion that he fails to satisfy the objective component because he does not demonstrate a serious medical need or a serious adverse health consequence from his alleged exposure to secondhand smoke at FCI Gilmer.

**a. Present Injury**

Under this prong, Plaintiff must produce evidence of a serious or significant injury resulting from his periodic exposure to secondhand smoke. Plaintiff made bare allegations that the exposure to secondhand smoke at FCI Gilmer injured him.

"[D]eliberate indifference to serious medical needs of prisoners" constitutes "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Plaintiff, however, failed to submit any

evidence in support of his medical condition. Although Plaintiff's Exhibit 1 displays a prescription for an inhaler, the prescriptions were given while he was housed at FCC Coleman and no longer exposed to the alleged periods of secondhand smoke at FCI Gilmer. In June 2012, Plaintiff reported headaches, shortness of breath, and dizziness to medical staff, but he did not attribute the problems to his exposure to secondhand smoke. On July 12, 2012, Plaintiff's medical records indicate that he complained his headaches were caused by the correctional officers smoking near him. Pl.'s Ex. C(4). However, the medical records do not substantiate causation of or aggravation of any injuries due to Plaintiff's brief and intermittent exposure to secondhand smoke. Indeed, the medical records show Plaintiff's subjective complaints regarding his medical condition, but the prison doctors and medical staff do not contain a diagnosis or medical treatment tying the alleged symptoms to an exposure to secondhand smoke. Accordingly, Plaintiff has failed to produce evidence of a serious or significant injury resulting from his periodic exposure to secondhand smoke.

### b. Future Harm

Plaintiff objects to Judge Seibert's finding that he has failed to demonstrate a substantial risk of serious future harm. In support of his objection, Plaintiff relies upon various exhibits he filed, including a 2006 summary of the surgeon general's report on secondhand smoke (Exhibit D), a letter from the National Cancer Institute ("NCI") providing Plaintiff with additional documents regarding secondhand smoke and a NCI fact sheet regarding secondhand smoke and cancer (Exhibit E), a letter from the National Institute of Allergy and Infectious Diseases ("NAID") responding to Plaintiff's

letter regarding his health (Exhibit F), and a letter from the National Heart, Lung, and Blood Institute ("NHLBI") responding to Plaintiff's letter concerning the health effects of smoke and his interest in secondhand smoke (Exhibit G).

Plaintiff's claim based upon future harm caused by exposure to secondhand smoke is governed by the Supreme Court's holding in Helling v. McKinney. 509 U.S. 25. In Helling, the Supreme Court held that deliberately indifferent exposure of an inmate to secondhand smoke may pose an unreasonable risk of serious damage to future health in violation of the Eighth Amendment's proscription on cruel and unusual punishment. 509 U.S. at 35. To prevail on such a claim, Plaintiff must satisfy two components. First, Plaintiff must "show that he . . . is being exposed to unreasonably high levels of" secondhand smoke. Id. Second, Plaintiff must "show that the risk of which he complains is not one that today's society chooses to tolerate." Id. at 36.

In this case, Plaintiff's allegations of future harm–even when construed in the light most favorable to him–have failed to satisfy the objective prong of the Farmer test. First, Plaintiff has made bare allegations that he was exposed to unreasonably high levels of secondhand smoke, and he has relied upon documents from various health institutions and a summary of a surgeon general's report stating any level of secondhand smoke is dangerous.[1] However, Judge Seibert concluded that although

_____

[1]Plaintiff's exhibits provide no medical findings. Instead, Exhibit E and D are summaries of secondhand smoke reports. Also, Exhibit F and G are letters responding to Plaintiff's initial inquiries to the institutions, but they provide no substantive information regarding whether Plaintiff has a serious medical need or a serious adverse health consequence from his alleged exposure to secondhand smoke at FCI Gilmer. Indeed, Plaintiff's exhibits are not the type of "evidentiary facts" needed to support or oppose a summary judgment motion. Evidentiary facts are those that would be admissible as

Plaintiff was incarcerated at FCI Gilmer for seven and a half months, he was only exposed to secondhand smoke for a short period of time–about three months and one week–because he was incarcerated in the Special Housing Unit for the remainder of his stay at FCI Gilmer.  Plaintiff alleges that he was only exposed to the secondhand smoke when he would walk outdoors through the compound three to four times a day.  Thus, Plaintiff was only exposed to secondhand smoke for a period of three months and one week--at the most--and only for a brief time period--three to four times a day when he would walk outdoors through the compound.  Additionally, his exposure to secondhand smoke was outdoors where it could easily disperse into the atmosphere.  Therefore, Plaintiff has failed to prove that he was exposed to *unreasonably* high levels of secondhand smoke.

Second, the risk Plaintiff complains of is one that today's society tolerates.  For instance, Plaintiff complains of walking by individuals who are smoking outside of buildings.  Contemporary standards of decency tolerate exposing individuals in the public to this risk as individuals walk past establishments and buildings every day where individuals are smoking, for instances on sidewalks and outside buildings such as restaurants, shops, and offices.

In reviewing Plaintiff's Complaint, exhibits, and objections, he has failed to produce evidence showing a genuine issue of material fact that satisfies the objective prong of Farmer.

_____

evidence at trial.  See Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) (holding that at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)).

## 2. Subjective Element

Although Plaintiff has failed to satisfy the objective element of the <u>Farmer</u> test, this Court will review whether Plaintiff has satisfied the subjective element of the <u>Farmer</u> test, which is also required to pursue his claim. To satisfy this element, the prisoner must show deliberate indifference by prison officials. <u>Farmer</u>, 511 U.S. at 837. Deliberate indifference exists if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> Additionally, the court should assess "the prison authorities' current attitudes and conduct" and whether the institution has adopted a smoking policy. <u>Helling</u>, 509 U.S. at 36.

In this case, Plaintiff has failed to satisfy the subjective element of the <u>Farmer</u> test for several reasons. First, Plaintiff has not shown deliberate indifference by prison officials. This case is unlike <u>Colon v. Sawyer</u>, No. 9:03-CV-1018, 2006 WL 721763 (N.D.N.Y 2006), where the plaintiff presented evidence that prison workers permitted smoking in his presence inside the poorly ventilated facilities despite knowing that he was diagnosed and treated for asthma. In this case, Plaintiff has presented no evidence that prison officials knew of any medical condition, such as asthma. Indeed, Plaintiff was not diagnosed with any similar medical condition. Additionally, prison officials did not permit smoking inside the facilities at FCI Gilmer or in poorly ventilated areas. Rather, Plaintiff alleges prison officials were smoking outside near the entrances and exits of buildings. Therefore, Plaintiff has not submitted evidence that prison

officials knew of and disregarded an *excessive* risk to inmate health or safety.

Second, in assessing the prison authorities' current attitudes and conduct, FCI Gilmer had a policy in place that limited staff's smoking to designated areas. See Decl. Of Sharon Wahl, ¶ 6. This policy was in place during the entirety of Plaintiff's incarceration at the facility, and it required staff to smoke in areas out of bounds to inmates and a minimum of twenty five feet away from entrances or exits of buildings. Additionally, on November 8, 2012, Warden Perdue reminded the staff to utilize only designated smoking areas. See Doc. [30-3].

Accordingly, Plaintiff has failed to satisfy the subjective element of the Farmer test. Therefore, his deliberate indifference claim regarding his exposure to secondhand smoke is **DISMISSED**.

### B. Deliberate Indifference to Serious Medical Needs

Plaintiff states that Defendants refused him medical attention for health issues caused by secondhand smoke exposure. Plaintiff's Complaint alleged medical staff refused to see him, told him he was wasting "$2 coming to them," and instructed him to buy tylenol from the commissary and stop wasting their time. Plaintiff objected to Judge Seibert's conclusion that Plaintiff's "medical records fail[ed] to demonstrate that any of his medical needs were ever not promptly or appropriately treated, or that his second hand smoke exposure caused him to suffer any serious adverse health consequences." Plaintiff has now provided copies of the labels from his prescribed medication to prove that he has a serious medical condition caused by his exposure to secondhand smoke.

As outlined above, Plaintiff's deliberate indifference claims are governed by the

two-part test in <u>Farmer</u>.  511 U.S. 825.  Therefore, Plaintiff must satisfy the objective and subjective elements to establish that prison officials acted with deliberate indifference to his medical needs.

### 1.  Objective Element

To satisfy the objective component, Plaintiff must establish that a serious or significant physical or emotional injury resulted because of the alleged inadequate medical treatment.  In this case, Plaintiff's Complaint fails to allege that he has suffered a significant physical or emotional injury as a result of inadequate treatment.  Accordingly, Plaintiff does not satisfy the objective component.

### 2.  Subjective Element

To satisfy the subjective component, Plaintiff must show deliberate indifference by prison officials to his serious medical needs.  Negligence or medical malpractice does not satisfy the subjective component.  <u>De'Lonta v. Angelone</u>, 330 F.3d 630, 634 (4th Cir. 2003); <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999).  Rather, a constitutional violation occurs when the medical staff's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  <u>Jackson v. Sampson</u>, No. 13-6293, 2013 WL 3892952, *1 (4th Cir. 2013) (quoting <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990)).  "An inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim."  <u>Id.</u>

Plaintiff objected to Judge Seibert's recommendation that the claims be dismissed for failure to state a claim for which relief can be granted.  In his objections,

Plaintiff states that after he told the medical staff that his health problems were caused by his secondhand smoke exposure, the medical staff "completely refuse[d]" to see him. Plaintiff states he was required to use medication off the indigent list. Plaintiff also disagrees with Judge Seibert's recitation of his medical records, however, Plaintiff provides no evidence or affidavit contradicting the information contained in his medical records.

Viewed in the light most favorable to Plaintiff, there is no genuine issue of material fact to support his deliberate indifference claim. Plaintiff's medical records indicate that before being transferred to FCI Gilmer, he was treated for headaches and pain in his left leg and both feet. While at FCI Gilmer, Plaintiff had multiple visits with prison medical staff. On June 13, 2012, Plaintiff had a medical visit in the Chronic Care Clinic, where he complained of headaches, dizziness, stomach aches, and extreme pain. The medical staff found his lungs were clear and prescribed Tylenol and Meloxicam for his pain. Medical staff also gave Plaintiff a prescription for his prostate problem and ordered laboratory tests. On July 3, 2012, Plaintiff went to sick call for sores in his mouth, pain in his hip, dizziness, and bleeding in his right ear. Medical staff examined Plaintiff, ordered x-rays and laboratory tests, and increased Plaintiff's dose of Meloxicam at his request. On July 12, 2012, Plaintiff visited medical staff complaining of pain in his hip, dizziness, headaches, nausea, and shortness of breath. Plaintiff was referred to the commissary to purchase over-the-counter Ibuprofen. On September 19, 2012, Plaintiff was prescribed over-the-counter chlorpheniramine tablets and simethicone. On November 19, 2012, Plaintiff received treatment at a BOP Health

Services Clinical Encounter.  On December 10, 2012, Plaintiff again received medical treatment in the Special Housing Unit for a chronic care orthopedic/rheumatology visit. Plaintiff was also seen by medical staff on January 7 and January 10, 2013.  On January 16, 2013, Plaintiff was transferred to FCI Coleman.

In evaluating Plaintiff's medical records and numerous visits with medical staff, it is clear that the medical staff's conduct was not so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. Instead, medical staff had frequent visits with Plaintiff that resulted in a diagnosis, laboratory tests, x-rays, and treatment.  Although Plaintiff did not agree with the course of treatment, Plaintiff's disagreement with his course of treatment is not cognizable under the Eighth Amendment.

Accordingly, Plaintiff's claim of deliberate indifference to his serious medical needs is **DISMISSED**.

### 5.  Recommendation to Dismiss the BOP and the Department of Justice ("DOJ") as Defendants

In the report and recommendation, Judge Seibert concluded that the BOP and the DOJ should be dismissed because they are not "persons" under Bivens.  Plaintiff generally objected to Judge Seibert's conclusions in the report and recommendation.

The United States Supreme Court has confined a Bivens action to persons and has declined to extend it to permit recovery against private corporations or government agencies.  See Corr. Servs. Corp. v. Malesko, 534, U.S. 61, 71-72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a Bivens

claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a <u>Bivens</u> claim against the officer's employer, the United States, or the BOP."); <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994) (holding there is no <u>Bivens</u> action against federal agencies). The Supreme Court reasoned that "the purpose of <u>Bivens</u> is to deter individual federal officers from committing constitutional violations." <u>Corr. Servs. Corp.</u>, 534 U.S. at 70. In this case, the BOP and the DOJ are agencies of the federal government, and they are not individual federal officers. Accordingly, all claims against the BOP and the DOJ are **DISMISSED**.

### 6. Recommendation to Dismiss Warden Perdue as Defendant

Plaintiff's Complaint names Warden Perdue as a Defendant acting under the authority or color of federal law at the time the claims occurred. Plaintiff states that Perdue had "control of the action[s] of his staff," "knew they were violating federal law by smoking inside the prison walls . . . where inmates had to walk thr[ough] the smoke," and "didn't stop them." In reviewing these claims, Judge Seibert recommended that the Court dismiss Plaintiff's claims against Perdue because Plaintiff failed to provide evidence that Perdue "tacitly authorized or was indifferent to an alleged violation of his constitutional rights." Plaintiff objects to Judge Seibert's recommendation because Plaintiff states that Perdue refused to "stop and correct his staff" for smoking on prison grounds and he failed to enforce FCI Gilmer's smoking policies.

First, inasmuch as Plaintiff alleges *respondeat superior* liability against Warden Perdue, the claim must be dismissed. In a <u>Bivens</u> action, "there is no *respondeat superior* liability." <u>Truloch v. Freeh</u>, 275 F.3d 391, 402 (4th Cir. 2001) (citation omitted).

18

Accordingly, Perdue has no *respondeat superior* liability for FCI Gilmer employees' alleged constitutional violations.

Second, Plaintiff must establish personal liability against Perdue that is based on his own constitutional violations. See Truloch, 275 F.3d at 402. "[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). A plaintiff must establish supervisory liability under Section 1983 by showing the following three elements: (1) "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff,"; (2) "the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'" and (3) "there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Stroud, 13 F.3d at 799.

To satisfy the first element, Plaintiff must show that the supervisor had knowledge of his subordinate's conduct and that conduct posed a pervasive and unreasonable risk of constitutional injury to Plaintiff. Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). To satisfy the second element, Plaintiff may establish deliberate indifference by demonstrating the supervisor's "continued inaction in the face of documented widespread abuses." Id. To satisfy the third element of causation, Plaintiff must show an "affirmative causal" link, which "encompasses cause in fact and proximate cause." Stroud, 13 F.2d at 799.

In this case, Plaintiff has not made a sufficient showing to establish the three elements of supervisory liability. First, as established above, Perdue's subordinates were not engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff. Second, Plaintiff has failed to establish that Perdue's response was so inadequate as to show deliberate indifference or a tacit authorization of prison officials smoking near entrances and exits in FCI Gilmer's facilities. In fact, Perdue, although denying Plaintiff's Administrative Remedy No. 700845-F1 on January 10, 2013, noted that "smoking occurs in the designated smoking areas within this institution . . . located within the established parameters . . . [and] Smoking inside of buildings by staff or inmates is prohibited [.]" [Doc. 30-3] at 35. Also, Perdue sent e-mails to FCI Gilmer staff reminding them to smoke in the designated areas and instructing them not to smoke in the designated areas in the center of the compound during the movement of the inmates. Third, Plaintiff has failed to show an affirmative causal link between Perdue's inaction and a particular constitutional injury suffered by Plaintiff. Therefore, Plaintiff has failed to sufficiently allege supervisory liability, and the claims against Warden Perdue are **DISMISSED**.

### 7. Recommendation to Dismiss Claims Against Counselor Creasy, Secretary Wilson, and Officer Thrope

Plaintiff's Complaint alleges that Counselor Creasy, Secretary Wilson, and Office Thrope would smoke on the job during their breaks. Judge Seibert dismissed these defendants for failure to state a claim upon which relief can be granted because, even taking these facts as true, they fail to establish a claim that the defendants were

deliberately indifferent to his secondhand smoke exposure or medical needs or that they violated his constitutional rights. Plaintiff objects to Judge Seibert's recommendation because he states that the defendants smoked in front of the entrances and exits and he would walk through their smoke at least three times a day, that the defendants knew of his concerns for his health as a result of exposure to secondhand smoke, and that they were violating federal law.

Pursuant to 28 U.S.C. § 1915(e)(2), the court "[s]hall dismiss the case at any time if the court determines that the action . . . fails to state a claim on which relief may be granted." In reviewing the allegations in Plaintiff's Complaint, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. Edwards, 178 F.3d at 243-44.

Even taking Plaintiff's allegations as true, Plaintiff merely establishes that Counselor Creasy, Secretary Wilson, and Officer Thrope were smoking on the job. Although his objection attempts to state more factual allegations, Plaintiff never moved to amend his complaint. To state a Bivens cause of action, Plaintiff must allege three elements: (1) the defendants are federal agents, (2) the defendants acted under color of their authority, and (3) the defendants engaged in unconstitutional conduct. Bivens, 403 U.S. at 389. Plaintiff attempts to allege a violation of his Eighth Amendment rights due to exposure to secondhand smoke while at FCI Gilmer. However, Plaintiff has failed to establish that Defendants were deliberately indifferent to his secondhand smoke exposure or medical needs. Indeed, Plaintiff has not alleged that these defendants

engaged in conduct that is "sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim," or that "the defendants *actually knew of* and *disregarded* a substantial risk of serious injury to the detainee . . . ." Young, 238 F.3d at 575-76 (emphasis added).  Accordingly, Plaintiff's Complaint against these defendants is **DISMISSED** for failure to state a claim upon which relief can be granted.

### 8.  Recommendation to Dismiss John and/or Jane Doe Defendants

Plaintiff's Complaint also named "numerous FCI Gilmer employees" including "officers, secretaries, counselors, case managers, etc."  Plaintiff's Complaint does not allege that these individuals were acting under authority or color of federal law at the times these claims occurred.  Judge Seibert recommended that this claim be dismissed as Plaintiff failed to timely effect service upon the John Doe and Jane Doe defendants.

Plaintiff has failed to object to this recommendation.  Therefore, "[i]n the absence of *specific* objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation." Avila v. Edgefield Fed. Prison, C.A. No. 0:10-2370, 2011 WL 2938216, *1 (D.S.C. July 21, 2011) (citing Cambry v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)).  However, the Court agrees with Judge Seibert that Plaintiff has been given ample opportunity to discover the identities of the John Doe and Jane Doe defendants in order to name them in his Complaint and properly serve them.  Plaintiff filed his Complaint on November 13, 2012, yet even after he was granted extensions of time to serve these defendants, he failed to provide the Court with their identities or to serve them.  The Court finds that Plaintiff has lacked diligence in discovering the identifies of and serving these defendants.

Accordingly, Plaintiff's claim against the John and Jane Doe defendants are **DISMISSED**.

### 9. Retaliation Claim

Plaintiff's Complaint alleges that he was retaliated against for filing complaints against BOP employees.  Plaintiff states he was subject to retaliation for filing grievances on BOP employees by the following means: (1) his room was subject to repeated searches; (2) he was denied jobs of any kind; and (3) his documents with workers' names and the dates they were smoking were confiscated.

To sustain a claim of retaliation in the context of prison administration, an *in forma pauperis* plaintiff "who claim[s] that [his] constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive § 1915(d)."  Adams v. Rice, 40 F.3d 72 (4th Cir. 1994).  "Claims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution."  Id. at 75.  Therefore, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right."  Id.  If a claim fails to allege a violation of a protected constitutional right, then it is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).  Additionally, a plaintiff must allege that he suffered adversity as a result of the violation.

First, Plaintiff asserts he was retaliated against for filing administrative grievances.  The Constitution does not create an entitlement to grievance procedures.  See Adams, 40 F.3d at 75; see also Murphy v. Inmate Sys. Mgmt., Inc., Civil Action No. 1:03-0170, 2008 WL 793631, *12 (S.D.W. Va. 2008) (stating that "federal inmates have

no constitutional right to participate in the BOP's administrative grievance proceedings"). Because there is no constitutionally protected right for access to the BOP's administrative grievance proceedings, Judge Seibert properly dismissed this claim.

Second, Plaintiff states his room was subject to repeated searches. However, a prisoner does not have a legitimate expectation of privacy in his prison cell, and "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984). Accordingly, the prison officials' searches of Plaintiff's cell did not violate his constitutional rights.

Third, Plaintiff claims he was subject to retaliation by prison officials denying him a prison job. However, prisoners do not have a constitutional right to a prison job. Therefore, prison officials depriving prisoners of a prison job states no independent constitutional claim. See Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995) ("Courts of appeals consistently have held that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest."); Patel v. Moron, 897 F. Supp. 2d 389, 400 (E.D.N.C. 2012) (holding prisoner had no constitutional right to a prison job). Accordingly, Plaintiff has failed to demonstrate the violation of a constitutional right.

Last, Plaintiff claims he was subject to retaliation by prison officials because they confiscated documents with workers' names and dates that were allegedly smoking in the facilities. Plaintiff has not stated that prison officials have thrown away or lost the

documents–merely that they were confiscated. In addition to Plaintiff proving that the retaliatory act violated a constitutional right or was punishment for the exercise of a constitutional right, Plaintiff must also show that he "suffered some adversity in response to [his] exercise of protected rights." ACLU v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993). Therefore, "where it is alleged . . . that prison officials confiscated or withheld legal materials or papers and hindered efforts to pursue legal claims, it must also be alleged and shown that the prison officials' conduct actually resulted in the complainant's inability to proceed in Court." Murphy, 2008 WL 793631 at *11. Because Plaintiff failed to allege that the confiscation of the documents resulted in his inability to pursue legal claims or proceed in Court, Plaintiff has failed to demonstrate the violation of a constitutionally protected right.

Accordingly, Plaintiff's retaliation claims are **DISMISSED**.

### 10.    Request for Injunctive Relief

Plaintiff also requests "an order to stop FCI Gilmer staff from smoking cigarettes inside the compound and to send [him] to a smoke-free FCI." Plaintiff did not specifically object to Judge Seibert's conclusion that his request for injunctive relief is moot. However, upon reviewing Plaintiff's request for injunctive relief, this Court also finds that Plaintiff's request is moot.

Article III of the United States Constitution limits the jurisdiction of federal courts to cases or controversies. When there is no viable legal issue left to resolve, the case is moot. See Powell v. McCormack, 395 U.S. 486, 496 (1969). In this case, Plaintiff requested the following injunctive relief: (1) force FCI Gilmer staff to immediately stop

smoking inside the compound; (2) transfer Plaintiff to a smoke-free facility; and (3)

transfer Plaintiff to a medical facility where he can receive medical monitoring. However,

Plaintiff has already been transferred from FCI Gilmer to a different facility.  A prisoner's

request for injunctive relief is moot where he or she has already been transferred from

the facility.  See Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); see also Davis v.

Frazier, 134 F.3d 362 (4th Cir. 1998) (affirming district court's dismissal of a prisoner's

mandamus petition based on mootness because the prisoner sought to compel the jail

superintendent to provide prisoners with additional legal resources, but the prisoner was

already transferred to another facility).  Accordingly, Plaintiff's claim for injunctive relief

is moot.

## V.  Conclusion

Upon careful review of the record, it is the opinion of this Court that the

magistrate judge's Report and Recommendation should be, and is, hereby **ORDERED**

**ADOPTED** for the reasons more fully stated therein.  Further, the Plaintiff's Objections

are **OVERRULED**. It is further ordered that the Defendants' Motion to Dismiss, or in the

Alternative, for Summary Judgment is **GRANTED** and Plaintiff's Complaint is **DENIED**

**and DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of this

Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and

to mail a copy to the *pro se* Plaintiff by certified mail, return receipt requested, to his last

known address as shown on the docket sheet.  Pursuant to Federal Rule of Civil

Procedure 58, the Clerk is directed to enter judgment on this matter in favor of the defendants.

**DATED**: January 6, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE